UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

DR. GERALD R. FINKEL, as Chairman of
the Joint Industry Board of the Electrical
Industry,

                            Petitioner,

            -against-

G ENERGY SOLUTION & SERVICES,
INC.,

                            Respondent.

----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-4276 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

        On July 21, 2022, Petitioner, Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry, filed a Petition to confirm and enforce an arbitration award (the "Award") entered against Respondent, G Energy Solution & Services, Inc. on June 27, 2022. (*See* Pet. to Confirm Arbitration Award ("Pet."), ECF No. 1, ¶ 31; Arbitration Opinion and Award ("Award"), ECF No. 1-8.) The arbitrator issued the Award upon finding that Respondent violated the collective bargaining agreement ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") and Respondent. (*See generally* Award, ECF No. 1-8.) Respondent has neither responded to this action nor otherwise sought to challenge the Award. For the following reasons, the Court respectfully recommends that the petition and request for attorney's fees and costs be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Plans

Petitioner is the Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"), which serves as the administrator of various employee benefit plans established and maintained pursuant to the CBA.[1] (Pet., ECF No. 1, ¶ 4.) The JIB is the administrator and fiduciary within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(16)(A)(i) and 1002(21)(A), of numerous employee benefit plans (referred to collectively as the "ERISA Plans"). (Pet., ECF No. 1, ¶ 5.) Each of the ERISA Plans is an employee benefit plan and a multi-employer plan under ERISA. (*Id.* ¶ 7.) *See* 29 U.S.C. § 1002(3) & (37). Each ERISA Plan is jointly administered by a board of trustees comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). (Pet., ECF No. 1, ¶ 7.)

Under the CBA, each employer is required to submit a weekly remittance to the JIB that includes contributions to each of the ERISA Plans (except for the Deferred Salary Plan (the "DSP"))[2] and an assessment collected from each employed Union member. (*Id.* ¶ 6.) For the DSP, employers are required to deduct a specified percentage from the weekly wages of covered employees and to remit that amount plus any additional salary deferrals the employee has elected ("Employee Contributions") to the

---

[1] The facts are taken from the Petition and exhibits and are presumed true since no response has been filed. *See, e.g., Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *1 (E.D.N.Y. Aug. 25, 2022).

[2] One of the ERISA Plans, the Deferred Salary Plan of the Electrical Industry (the "DSP"), is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code. (Pet., ECF No. 1, ¶ 8.)

DSP. (*Id.* ¶ 8.) Employers must also remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"); collectively, the Employee and Employer Contributions constitute the "DSP Contributions." (*Id.* ¶¶ 8–11.) The JIB may also collect employee loan payments and funds to support the operations of the Board (collectively referred to as "Non-ERISA Plan Contributions"). (*Id.* ¶¶ 9–10.) Employer contributions to each of the ERISA Plans (except the DSP), the Union assessment remittances, and the Non-ERISA Plan Contributions are referred to as the "JIB Contributions." (*Id.* ¶ 12.) The JIB Contributions, together with the DSP Contributions, are the "Required Contributions." (*Id.*)

Respondent is a corporation organized under the laws of the State of New York and maintains its principal place of business at 2175 Jerome Avenue, Bronx, NY 10453. (*Id.* ¶ 13.) Respondent, at all relevant times, was an "employer" under ERISA and the LMRA. (*Id.*) *See* 29 U.S.C. §§ 142(3), 1002(5). The JIB maintains its principal place of business in Flushing, New York, and administers the plans within this district. (Pet., ECF No. 1, ¶¶ 3–4.)

## II. The Collective Bargaining Agreement

Respondent agreed to be bound by the CBA for the period of April 10, 2019 through April 13, 2022. (Pet., ECF No. 1, ¶¶ 14–15; *see* Letter of Assent, ECF No. 1-1; Agreement and Working Rules ("CBA"), ECF No. 1-2.) Under the CBA, Respondent was required to make Required Contributions to the ERISA Plans, the Non-ERISA Plans, and to the Union "for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf Required Contributions are made." (Pet., ECF No. 1, ¶ 16; *see* CBA, ECF No. 1-2, Art. II §§ 3–9, 11, 19–20.) In addition, under the CBA, the parties agreed to be bound by the

3

provisions of the plan and trust documents, "including but not limited to, the Policy for the Collection of Delinquent Contributions." (Pet., ECF No. 1, ¶ 17; CBA, ECF No. 1-2, Art. II § 12(a).) The CBA further provides that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of twenty (20%) percent, in the event of entry of judgment against the Employer in an action or proceeding to collect delinquent contributions." (CBA, ECF No. 1-2, Art. II § 12(a).)

The JIB's policy for the collection of delinquent contributions ("Collection Policy") provides that (1) if "an employer fails to remit Contributions and has not submitted payroll reports for such unpaid Contributions, the [JIB] may use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer"; (2) the interest rate for delinquent contributions is to be calculated "at the rate set forth in Section 6621 of the Internal Revenue Code" for all ERISA Plans (except for the National Electrical Benefit Plan ("NEBF"), which has adopted a 10% interest rate); and (3) an employer shall be liable for liquidated damages and attorney's fees and costs if legal action is commenced. (Collection Policy, ECF No. 1-3, Art. II.E §§ 1–2, II.F § 1, amend. § 4.) The JIB also established arbitration procedures, which provide that the arbitrator shall have the authority to resolve any disputes between the JIB and an Employer "related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorney's fees and costs" and that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees, attorney's fees, and costs. (Arbitration Procedures, ECF No. 1-4, §§ I.K, II, X.)

### III. The Arbitration and Award

Petitioner claims that Respondent failed to remit Required Contributions for the payroll weeks ending July 28, 2021 through November 24, 2021. (Pet., ECF No. 1, ¶ 26.)

4

On March 11, 2022, pursuant to the Collection Policy and Arbitration Procedures, Petitioner initiated arbitration before the designated arbitrator, Stephen F. O'Beirne, Esq., and sent a notice of intent to arbitrate and a memorandum to Respondent by electronic mail. (*See* Statement of Claims, ECF No. 1-5; Pre-Hearing Mem. of Law, ECF No. 1-6.)

The arbitrator held a hearing on June 21, 2022, at which Respondent's office administrator appeared. (Pet., ECF No. 1, ¶ 29; Award, ECF No. 1-8, at 3.) On June 27, 2022, the arbitrator found that Respondent was in violation of the CBA by failing to remit contributions for the payroll periods ending July 28, 2021 through November 24, 2021. (Award, ECF No. 1-8, at 4.) The arbitrator ordered Respondent to pay Petitioner the following:

> [T]he sum of $92,053.81 consisting of: (1) JIB Contributions of $45,938.73; (2) DSP contributions of [$23,510.91³]; (3) additional interest of $3,997.57; (4) liquidated damages of $13,889.93; and (5) legal, administrative and arbitration fees of $4,716.67.

(Pet., ECF No. 1, ¶ 32; *see* Award, ECF No. 1-8, at 5.) The arbitrator also found that Respondent would be "responsible for any costs, including reasonable attorney's fees, incurred by the JIB in enforcing [the] Opinion and Award." (Award, ECF No. 1-8, at 6.)

Respondent has not abided by the Award. The Award has not been vacated or modified, and Respondent has not applied for such relief. (Pet., ECF No. 1, ¶¶ 34–36.) Petitioner now seeks confirmation of the Award, as provided for under the CBA and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

---

³ The Court notes that the Petition appears to contain a typographical error in that it alleges an award of $25,510.91 in delinquent DSP Contributions. (*See* Pet., ECF No. 1, ¶ 32.) The Court recites the award as stated in the Award. (*See* Award, ECF No. 1-8, at 5.)

5

## IV. Procedural History

Petitioner timely filed the instant Petition on July 21, 2022.[4] Petitioner asks the Court to (1) confirm the award; (2) award judgment in favor of Petitioner in the amount of $92,053.81, plus interest from the date of the Award through the date of judgment; and (3) award $941.53 in attorney's fees and costs. (Pet., ECF No. 1, ¶ 45 & at p. 9.)

Respondent was served with the Petition on July 25, 2022, and Respondent's Answer was due by August 15, 2022. (Aff. of Service, ECF No. 9.) *See* Fed. R. Civ. P. 12(a)(1)(A)(i). On August 16, 2022, Petitioner submitted a letter motion requesting that the petition to confirm the arbitration award be treated as an unopposed motion for summary judgment. (*See* Letter Mot., ECF No. 10.) The Hon. Hector Gonzalez directed service on September 1, 2022. (Sept. 1, 2022 ECF Order.) Petitioner filed proof that service of the Petition and letter motion was effected on September 6, 2022. (Decl. of Adrianna R. Grancio, ECF No. 11 (indicating that the Petition was sent by first class, certified, and electronic mail to Respondent at its last known addresses).) Judge Gonzalez thereafter referred the unopposed motion for summary judgment to the undersigned Magistrate Judge for a Report and Recommendation. (Oct. 11, 2022 ECF Order.) To date, there has been no response to the Petition or the motion.

---

[4] The Court notes that Petitioner filed well within the one-year statute of limitations for a petition to confirm an arbitrator's award. *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003) ("[S]ection 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA.").

## DISCUSSION

**I. Legal Standards**

**A. Arbitration Awards**

Arbitration awards are not self-enforcing and "must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006);[5] *see also Trs. of the Bldg. Trades Annuity Fund, Educ. Fund, Welfare Fund & U.S. Serv. Workers Sec. Fund v. N.Y. Elec. Grp., Inc.*, No. 11-CV-3801 (ADS) (ETB), 2012 WL 4328632, at *2 (E.D.N.Y. Mar. 21, 2012), *report and recommendation adopted*, No. 11-CV-3801 (ADS) (ETB) (E.D.N.Y. Sept. 19, 2012). The Second Circuit has instructed district courts that unopposed petitions to confirm arbitration awards should be construed as unopposed motions for summary judgment. *D.H. Blair & Co.*, 462 F.3d at 110; *see Finkel v. Uptown Commc'ns & Elec., Inc.*, No. 20-CV-3303 (LDH) (CLP), 2022 WL 2467471, at *3 (E.D.N.Y. Apr. 12, 2022). Accordingly, courts in this circuit generally use "the *Blair* standard to defer to an arbitrator's award, and confirm the award so long as the arbitrator provided a barely colorable justification for the outcome reached." *Uptown Commc'ns & Elec., Inc.*, 2022 WL 2467471, at *3 (quotation marks and citations omitted).

Put another way, the "review of arbitration awards is 'very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (quoting *Folkways Music Publishers, Inc. v. Weiss*,

---

[5] In the labor context, "Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984).

7

989 F.2d 108, 111 (2d Cir. 1993)). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). The Supreme Court has also observed that "courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

This deference supports the federal policy of respecting parties' contractual agreements, particularly in the context of labor unions. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36 (quoting *United Steelworkers*, 363 U.S. at 597). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

However, in the context of an unopposed motion to confirm such an award, the Court must still determine whether Petitioner has demonstrated that there are no material issues of fact in dispute, because "[e]ven unopposed motions for summary

8

judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

### B. Attorney's Fees and Costs

Under ERISA, "[i]n any action . . . in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Here, the CBA also provides that Petitioner is entitled to attorney's fees and costs. (Pet., ECF No. 1, ¶¶ 17–18; CBA, ECF No. 1-2, Arts. II § 12(a), III R. 2(g)(3), X § 4.) "As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999 (5th Cir. 1982)); *see also First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Loc. 338*, 118 F.3d 892, 898 (2d Cir. 1997) (quoting *Int'l Chem. Workers Union (AFL-CIO), Loc. 227*, 774 F.2d at 47) ("In actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has 'refuse[d] to abide by an arbitrator's decision without justification.'").

## II. Analysis

### A. Confirmation of the Arbitration Award

Here, notwithstanding proper service of the Petition and the motion, Respondent has not appeared. The Court concludes that, in the absence of any opposition, Petitioner

9

has established that there are no material facts in dispute.[6] In addition, based on the evidence presented at the arbitration, the record shows that the arbitrator had a reasonable basis for his conclusion that Respondent failed to remit contributions to the Plans during the specified time periods. (*See* Award, ECF No. 1-8.) The record also amply establishes that the arbitrator acted within the scope of his authority and that he had an adequate basis for the Award. (*See id.*) Specifically, based on the CBA and the exhibits presented, including a summary of payments and delinquencies, the arbitrator ordered Respondent to pay the sum of $92,053.81 consisting of: (1) JIB Contributions of $45,938.73; (2) DSP Contributions of $23,510.91;[7] (3) additional interest of $3,997.57; (4) liquidated damages of $13,889.93; and (5) legal, administrative and arbitration fees of $4,716.67.[8] (Award, ECF No. 1-8, at 5.) The record shows the arbitrator awarded these

---

[6] In addition to evaluating whether the arbitrator has a basis for the Award, the Court notes that Petitioner has demonstrated proper service on Respondent in this case, as well as compliance with the procedures required under the CBA. (*See* Aff. of Service, ECF No. 9; Decl. of Adrianna R. Grancio, ECF No. 11.) Specifically, Petitioner commenced arbitration in accordance with the CBA, leading to an arbitration award for Petitioner, and now Petitioner seeks to confirm that award, as provided for under the CBA. (Pet., ECF No. 1, ¶¶ 19, 23–24, 26–32.) The record establishes that Respondent agreed to be bound by the CBA, the Collection Policy, and the Arbitration Procedures. (*See* Letter of Assent, ECF No. 1-1; CBA, ECF No. 1-2.) The evidence submitted at arbitration showed that Petitioner complied with the required procedures under the CBA and that notice to Respondent was provided. (*See* Pet., ECF No. 1, ¶¶ 27–29; Statement of Claims, ECF No. 1-5.)

[7] As observed *supra* note 3, the Petition alleges an award of $25,510.91 in delinquent DSP Contributions. (*See* Pet., ECF No. 1, ¶ 32.) The Court recommends awarding the amount the arbitrator ordered, i.e., $23,510.91 in DSP Contributions.

[8] As noted above, Petitioner is entitled to attorney's fees under both the CBA and ERISA. (Pet., ECF No. 1, ¶¶ 17–18; CBA, ECF No. 1-2, Arts. II § 12(a), III R. 2(g)(3), X § 4.) *See* 29 U.S.C. § 1132(g)(2)(D). In support of the application for attorney's fees for the arbitration, Petitioner sought $3,316.67 in total legal and arbitration fees. (*See* Award, ECF No. 1-8, at ECF p. 3, 7 (indicating that petitioners submitted an updated request by the date of the arbitration).) At the arbitration, the arbitrator awarded Petitioner $4,716.67 in "legal, administrative and arbitration fees," noting in a footnote that the total amount "includes a charge of one-thousand four hundred dollars ($1,400.00) for drafting this Opinion and Award." (*Id.* at 5 & n.6.) The record demonstrates that the total amount awarded ($4,716.67) comprised Petitioner's $3,316.67 in legal and administrative fees plus $1,400 for drafting the arbitration opinion and Award. The arbitrator thus had a sound basis for the award of fees and costs.

10

amounts in accordance with the CBA, Collection Policy, and Arbitration Procedures. Accordingly, the Award should be confirmed.[9] (*See* Award, ECF No. 1-8.)

Given that an arbitration award should be confirmed if there exists "'even a barely colorable justification for the outcome reached,'" the Court "must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)); *see also Marc Rich & Co.*, 579 F.2d at 704.

### B. Attorney's Fees and Costs

In evaluating an application for attorney's fees, "the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the 'lodestar' — what we think is more aptly termed the 'presumptively reasonable fee.'" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). As of 2020, "[i]n the Eastern District of New York, prevailing rates range from $300 to $400 per hour for experienced attorneys, $200 to $300 per hour for senior associates, and $100 to $150 per hour for junior associates." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *9 (E.D.N.Y. May 4, 2020) (collecting cases), *report and recommendation adopted*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "Some [Eastern District of New York] judges 'have recognized slightly higher

---

[9] Not only was the Award justified by the CBA and plan documents, ERISA also directs courts to award (1) "the unpaid contributions," (2) "interest on the unpaid contributions," and (3) "an amount equal to the greater of — (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of [the unpaid contributions]." 29 U.S.C. § 1132(g)(2). When interest accrues during the pendency of an action and is explicitly requested, such interest shall be awarded. *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005) ("In general, a district court has discretion to award ERISA damages that accrue during the pendency of an action.").

11

ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Safeco Ins. v. M.E.S., Inc.*, No. 09-CV-3312 (PKC) (VMS), 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018) (quoting *Small v. N.Y.C. Transit Auth.*, No. 03-CV-2139 (SLT) (MDG), 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)), *aff'd*, 790 F. App'x 289 (2d Cir. 2019).

In support of the request for attorney's fees related to this Petition, counsel has submitted an invoice documenting the specific tasks performed, the hours worked, and the hourly rates for attorneys and support staff. (Billing Records, ECF No. 1-9.) The requested fee is based on a billing rate for an associate at the rate of $290 per hour. (Pet., ECF No. 1, ¶ 40.) Here, Petitioner requests the award of fees for 1.6 hours of legal work, related to drafting, finalizing, and filing the petition, for a charge of $464 in fees. (Billing Records, ECF No. 1-9.) Just this year, courts in this circuit have awarded attorney's fees in similar matters for the same associate at a rate of $250 per hour. *See, e.g., Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atlantic Steel Sols., LLC*, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4642735, at *11–12 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. CEI Contractors Inc.*, 21-CV-7870 (JPC), 2022 WL 3225680, at *5 (S.D.N.Y. Aug. 10, 2022). The Court therefore recommends awarding $400 in attorney's fees for 1.6 hours of work, compensated at a rate of $250 per hour.

Petitioner also seeks $477.53 in court filing fees and charges related to service of the Petition. (Pet., ECF No. 1, ¶ 44.) The Court may take judicial notice of the $402 filing fee and, although Petitioner has not submitted any supporting documentation for the additional $75.53, the Court notes that the affidavit of service filed in this case reflects a

12

charge of $40. (*See* Aff. of Service, ECF No. 9.) Accordingly, the Court further finds that Plaintiff has demonstrated costs in the amount of $442.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the Petition to confirm the arbitration award be granted and that judgment be entered in Petitioner's favor. Specifically, the Court recommends (1) confirming the arbitration award; (2) awarding judgment in favor of Petitioner in the amount of $92,053.81 consisting of (a) JIB Contributions of $45,938.73; (b) DSP Contributions of $23,510.91; (c) additional interest of $3,997.57; (d) liquidated damages of $13,889.93; and (e) legal, administrative and arbitration fees of $4,716.67; and (3) awarding $842 in attorney's fees and costs in connection with this case.[10]

\* \* \* \* \*

This Report and Recommendation will be filed electronically, and a copy will be sent by mail to Respondent G Energy Solution & Services, Inc. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Hector Gonzalez, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing

---

[10] As for prejudgment interest in this case, the Court notes that such interest is anticipated by the Collection Policy as set forth above. (*See* Collection Policy, ECF No. 1-3, Art. II, § E(1).) Petitioner has not, however, provided calculations or proposed how prejudgment interest should be calculated, including, for example, the deficiency amount under the NEBF, for which interest is calculated at a different rate. Due to this information gap, the Court declines to recommend the award of prejudgment interest at this time. However, petitioner may submit proposed prejudgment interest calculations by January 3, 2023. *See, e.g., Finkel v. High Volt Elec. Corp. of Am.*, No. 21-CV-1881 (AMD) (RML), 2021 WL 6494727, at \*4 (E.D.N.Y. Nov. 30, 2021), *report and recommendation adopted*, No. 21-CV-1881 (AMD) (RML), 2022 WL 125824 (E.D.N.Y. Jan. 13, 2022).

time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989))).

**SO ORDERED.**

Dated: Brooklyn, New York
  December 19, 2022

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE
